UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY, et al.,** } } } | |
| Plaintiffs, } } | |
| v. } } | Case No.: 1:23-CV-1367-RDP |
| **SHAW INDUSTRIES, INC. et al.,** } } | |
| Defendants. } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Shaw Industries, Inc.'s Motion to Transfer Venue Under 28 U.S.C. § 1404(a). (Doc. # 63). The Motion (Doc. # 63) has been fully briefed. (Docs. # 63, 72, 78). For the reasons discussed below, the Motion (Doc. # 63) is due to be granted.

### I.    Factual Background

Defendant Shaw Enterprises, Inc. ("Shaw") is a producer and manufacturer of carpet, resilient flooring, hardwood, tile, stone, synthetic turf, and other specialty flooring products with its principal place of business in Dalton, Georgia. (Doc. # 65 at ¶¶ 10, 26). Shaw currently operates facilities in Alabama and Georgia. (*Id.* at ¶ 28).

Beginning in the 1950s and through the 1980s, manufacturers began creating stain blocker and soil-resistant products that were used to treat carpets, including Scotchgard, Teflon, and Stainmaster. (*Id.* at ¶¶ 29-35). Shaw purchased and used some of these stain-resistant products in its carpet manufacturing operations. (*Id.* at ¶¶ 30-36). Many of these stain-resistant products contained perfluoroalkyl and polyfluoroalkyl substances, commonly referred to by the acronym "PFAS." (*Id.* at ¶ 37). Shaw allegedly used the stain-resistant products, that contained

PFAS (*Id.* at ¶ 38), and those products were discharged with wastewater produced as a by-product of Shaw's manufacturing process.

Shaw utilized Dalton Utilities to dispose of any wastewater produced in its manufacturing process. (*Id.* at ¶ 39). In the 1980s, Dalton Utilities applied for and obtained a permit to operate a Land Application System ("LAS") for Shaw's wastewater disposal needs. (*Id.* at ¶¶ 40-41). The LAS is an approximately 9,600-acre system, operated by Dalton Utilities, in which wastewater is processed from Shaw's manufacturing plant in Georgia and dispersed onto the land surface. (*Id.* at ¶ 42).

Around the same time, Shaw began purchasing liability insurance policies from Federal Insurance Company ("Federal"). (*Id.* at ¶ 70). From 1980 to 1985, Federal issued insurance policies to Shaw that contained coverage for (among other things) accidental discharge of pollutants. (*Id.* at ¶ 75). From 1985 to 2016, Federal issued insurance policies to Shaw that contained absolute pollution exclusions. (*Id.* at ¶¶ 78-79). All the insurance policies issued to Shaw from Federal were delivered, received, and accepted in Georgia. (Doc. # 63-1 at ¶ 10). During this same period, Shaw also purchased various liability insurance policies from Pacific Employers Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company, Indemnity Insurance Company of North America, and Westchester Fire Insurance Company (collectively referred to as the "Additional Plaintiff Insurers"). (Doc. # 65 at ¶ 82).

In recent years, numerous municipal entities in both Alabama and Georgia have brought legal actions against Shaw, alleging environmental contamination caused by water runoff Pcontaining Shaw's PFAS (hereinafter referred to as the "underlying actions").[1] (*Id.* at ¶¶ 46-47).

---

[1] The underlying actions in Alabama are: *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 1:23-cv-00609-CLM in the United States District Court for the Northern District of Alabama;

The allegations in the underlying actions include assertions that for decades Shaw had knowledge that PFAS could not be removed from the wastewater it sent to Dalton Utilities and that Shaw "expressly and directly aimed polluted wastewater from their plants not only at Dalton Utilities and the LAS in Georgia but also Alabama through the continuing flow of the polluted wastewater from [Shaw's] plants, into the Coosa River and its tributaries" to surrounding counties. (*Id.* at ¶¶ 49, 67).

Shaw has made a demand for coverage under the insurance policies issued by Federal for indemnity in the underlying actions. (*Id.* at ¶ 92). In addition, Shaw has put the Additional Plaintiff Insurers on notice of the underlying actions but has not yet sought coverage from them. (*Id.* at ¶ 94).

On December 27, 2023, Federal and the Additional Plaintiff Insurers (collectively "Plaintiffs") filed their First Amended Complaint in the United States District Court for the Northern District of Alabama, seeking a declaratory judgment that they have no duty to provide insurance coverage to Shaw in connection with the underlying actions. (*Id.* at ¶¶ 91-98).

In addition, the First Amended Complaint also names the following insurance companies as Nominal Defendants: Commerce & Industry Insurance Company; First State Insurance Company; Employers Insurance Company of Wausau; Great American Insurance Company; U.S. Fire Insurance Company; and Travelers Casualty and Surety Company (collectively the "Defendant Insurers"). (*Id.* at ¶¶ 99-102). Plaintiffs contend that the Defendant Insurers also

---

*Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et. al.*, 61-cv-2023-900112.00, filed in the Circuit Court of Talladega County, Alabama; *The Water Works and Sewer Board of the City of Gadsden v. 3M Company, et al.*, 31-cv-2016-900676.00, filed in the Circuit Court of Etowah County, Alabama; and *The Water Works and Sewer Board of the Town of Centre v. 3M Company, et al.*, 31-cv-2017-900049.00, filed in the Circuit Court of Cherokee County, Alabama. (Doc. # 65 at ¶ 46).

The underlying actions in Georgia are: *The City of Rome, Georgia v. 3M Company, et al.*, 19-cv-02405-JFL-003, filed in the Superior Court of Floyd County, Georgia; and *Jarrod Johnson, individually and on behalf of a class of persons similarly situated v. 3M Company, et al.*, 4:20-cv-0008-AT, filed in the United States District Court for the Northern District of Georgia. (Doc. # 65 at ¶ 47).

issued policies to Shaw that potentially provide insurance coverage for the underlying actions. (*Id.* at ¶ 100). As a result, the First Amended Complaint also requests that, should the court find that Federal or the Additional Plaintiff Insurers have an obligation to provide coverage to Shaw in the underlying actions, the court also declare that the Defendant Insurers have the same obligation. (*Id.* at ¶ 102).

On December 21, 2023, Shaw filed a Motion to Transfer Venue Under 28 U.S.C. § 1404(a). (Doc. # 63). The Motion seeks to transfer this case to the United States District Court for the Northern District of Georgia. (*Id.*). Plaintiffs oppose the Motion to Transfer and maintain that the Northern District of Alabama is the proper venue. (Doc. # 72). The Defendant Insurers join Plaintiffs in opposition to the Motion to Transfer. (Docs. # 73, 74, 75, 81).

## II.     Legal Standard

The movant bears the burden of establishing that transferring venue to another forum is more convenient. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). "The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).

A plaintiff's choice of forum is accorded considerable deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). That is, a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

But, while a plaintiff's forum choice is entitled to deference, federal law provides for transfer in certain circumstances. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, when addressing a motion under §

1404(a), the court employs a two-step analysis. *See A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003); *Cook v. Publix Supermarkets, Inc.*, 2020 WL 13157798, at *1 (N.D. Ala. 2020). First, the court must determine whether the plaintiff could have originally filed the case in the venue to which the movant seeks to transfer the case. *A.J. Taft*, 291 F. Supp. 2d at 1307; *Walter Energy, Inc. v. Walter Inv. Mgmt. Corp.*, 2015 WL 12751048, at *4 (N.D. Ala. 2015). Next, the court must consider whether the circumstances of the case warrant transfer. *A.J. Taft*, 291 F. Supp. 2d at 1307; *Walter Energy*, 2015 WL 12751048, at *4.

**III.     Discussion**

The Supreme Court has emphasized that motions for transfer under § 1404(a) should be decided on "'an individualized case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Thus, the court applies the two-factor test in the particular context of this case.

**A.     This case could have originally been filed in the Northern District of Georgia.**

Under 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b)(1)-(3). In a state with more than one judicial district, a corporate defendant resides in any district in that state "within which its contacts would be sufficient to subject it to personal jurisdiction." *Id.* at § 1391(d).

5

In opposing the motion, Plaintiffs devote much of their briefing to explaining why this case was appropriately filed in this district. But that is not the relevant question here. Rather, the proper venue analysis focuses on whether this action could also have been filed in the Northern District of Georgia. Because § 1391(b)(2) allows a suit to be brought in *any* district where a substantial part of the events or omissions giving rise to the claim occurred, venue can be -- and often is -- proper in multiple districts. *See Jenkins v. Brick Co. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). Plaintiffs do not dispute that the Northern District of Georgia is an appropriate forum for this suit. (*See* Doc. # 63 at 2). And, its failure to dispute this is with good reason.

A review of the record shows quite clearly that this matter could have originally been filed in the Northern District of Georgia under both § 1391(b)(1) and (2). Because Shaw's principal place of business is in Dalton, Georgia, which falls within the Northern District of Georgia, its contacts with the district are sufficient to subject it to personal jurisdiction there. In addition, a substantial part of the events giving rise to the coverage issues in this lawsuit occurred in the Northern District of Georgia. The current matter stems from disputed insurance coverage for the release of PFAS and related chemicals present in Shaw's wastewater. The insurance policies were delivered, received, and accepted in Georgia. (Doc. # 63-1 at 3-4). Further, the disposal of the wastewater containing the PFAS occurred at the LAS facility in Georgia. (Doc. # 65 at ¶ 43; 63-1 at 3). Thus, the first step of the § 1404(a) transfer analysis is satisfied.

**B.    The circumstances of the case warrant transfer.**

Having decided that the Northern District of Georgia is a proper transferee district, the court now considers whether transfer of venue would be fair, promote convenience, and advance the interest of justice. 28 U.S.C. § 1404(a). This analysis "requires a balancing of practical

considerations, which centers on convenience of the parties and witnesses, with the interest of justice, which focuses on fairness and efficiency." *A.J. Taft Coal Co., Inc.*, 291 F. Supp. 2d at 1309. The Eleventh Circuit has noted nine case-specific factors to consider:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative fact; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Before analyzing these factors against the facts of this case, the court first addresses Plaintiffs' choice of forum, which is typically entitled to considerable deference. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *In re Ricoh Corp.*, 870 F.2d at 573.

### 1. Plaintiffs' Choice of Forum

"[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *In re Ricoh Corp.*, 870 F.2d at 573 (citing *Gulf Oil Corp.*, 330 U.S. at 508). Indeed, generally, when determining the propriety of transfer, "[t]he Eleventh Circuit has determined that a court should be somewhat restrictive in transferring actions" and that "the plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1357 (M.D. Ala. 1998) (citing *Robinson*, 74 F.3d at 260). "However, 'when the operative facts underlying the cause of action did not occur within the forum chosen by the [p]laintiff, the choice of forum is entitled to less consideration.'" *Liberty Nat. Life Ins. Co. v. Suntrust Bank*, 2012 WL 3849615, at *11 (N.D. Ala. 2012) (quoting *Gould.*, 990 F. Supp. at 1358, in turn quoting *Garay v. BRK Elecs.*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)).

This lawsuit primarily arises from activity that took place in Georgia. Each of the insurance policies at issue in this action were delivered, received, and accepted in Georgia. Further, the insurance dispute centers around whether Plaintiffs have a duty to indemnify in the underlying actions based on Shaw's alleged use of PFAS at its plant in Dalton, Georgia and its disposal of contaminated wastewater at the LAS, also in Dalton, Georgia. Although the alleged contamination may have flowed from Northern Georgia into Alabama via the Coosa River, the key operative facts giving rise to this case -- *i.e.*, the issuance of insurance policies and the alleged improper release of pollutants -- all occurred in Georgia.

In addition, a plaintiff's choice of forum is entitled to less deference when the plaintiff is not a resident of that forum. *See Swisher v. Nissan Motor Acceptance Company, LLC*, 2022 WL 17169603, at *3 (N.D. Ala. 2022); *Combs v. Fla. Dep't of Corrs.*, 461 F. Supp. 3d 1203, 1214 (N.D. Fla. 2020). Here, not only are none of the Plaintiffs residents of Alabama, neither are Shaw or any of the Defendant Insurers. *See Goodson v. Cintas Corp. No. 2*, 2021 WL 4844208, at *3 (N.D. Ala. 2021) (venue in the Northern District of Alabama was "entitled to less weight because none of the parties reside" there).

In the current matter, the operative facts related to insurance coverage did not occur in Alabama, nor are any of the parties residents here. Therefore, Plaintiffs' choice of Alabama as the forum is entitled to less deference. Nonetheless, even when a chosen forum is due less deference in this case, a court must nonetheless find that the balance of factors clearly weighs in favor of transfer. *See Robinson*, 74 F.3d at 260.

    **2.    The Convenience of the Witnesses**

"It is often said that 'the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses.'" *Harper v. Am. Airlines, Inc.*, 2009 WL 1605800,

at *5 (N.D. Ala. 2009) (quoting *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1091 (M.D. Ala. 1996)); *see also Chambers v. Merrill Lynch & Co., Inc.*, 2010 WL 11565361, at *3 (N.D. Ala. 2020). Specifically, in determining convenience, the relevant question is who are the "key witnesses" (*i.e.*, those who have information regarding the liability of the defendant). *Chambers*, 2010 WL 11565361, at *4; *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1365 (N.D. Ga. 2004). This dispute centers around whether there is insurance coverage for pollutants released from Shaw's manufacturing plants. Therefore, key witnesses in this case would be those with knowledge regarding the insurance policies and Shaw's waste removal process.

Shaw has identified two categories of key witnesses that weigh in favor of transfer to the Northern District of Georgia. First, because Shaw is headquartered and incorporated in Georgia, any current or former employees who may serve as witnesses will likely be residents of the Northern District of Georgia as well. Specifically, any employees who took part in either (1) obtaining or negotiating the contested insurance policies or (2) the use and disposal of PFAS worked or still work at Shaw's headquarters in Georgia. Plaintiffs allege that Shaw's general references to these potential key witnesses are insufficient to support transfer. The court disagrees. Both this court and others have found that transfer is appropriate when a party fails to name specific witnesses but can show that relevant company personnel tend to work and live in a specific district. *See Chambers*, 2010 WL 11565361, at *4; *see also Johnston v. Foster Wheeler Constructors, Inc.*, 158 F.R.D. 496 (M.D. Ala. 1994) (concluding that transfer of venue was appropriate -- notwithstanding the defendant having failed to name any specific witnesses who resided in Florida -- because relevant supervisory personnel worked and continued to reside in the Southern District of Florida).

Second, Shaw argues that Dalton Utilities will be a key non-party witness in this matter, and that entity is also located in the Northern District of Georgia. Plaintiffs dispute this contention, but do so only by arguing that Dalton Utilities is also a party to some of the underlying suits and, thus, has already been deposed. However, this assertion does not change the continued importance of the location of a witness in litigation, particularly if this case later proceeds to trial. *Yaeger v. Wyndham Vacation Resorts, Inc.*, 2013 WL 12251716, at *2 (N.D. Ala. 2013) (stating that the fact that key witnesses may have already been deposed does not change their level of importance in a litigation). To be sure, it is particularly relevant that, at present, the only non-party witnesses who have been identified as having relevant information regarding Shaw's practices of disposing of PFAS work or previously worked in Georgia. *See Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1228 (S.D. Fla. 2016) ("The convenience of non-party witnesses is an important, if not the most important, factor in determining whether a motion to transfer should be granted."). The same is true with respect to witnesses with knowledge of the formation and execution of the parties' insurance agreements.

Plaintiffs contend that there will also be fact witnesses from the underlying cases in Shelby, Etowah, Cherokee and Talladega Counties of Alabama because "these are the sites of the claims and the suits." (Doc. # 72 at 11). The court notes that, in making this argument, Plaintiffs fail to acknowledge that a number of the underlying cases also involve alleged downstream damage suffered by communities in Georgia. In any event, however, Plaintiffs have failed to show how any Alabama (or Georgia) witnesses who suffered property damage are "key witnesses" on the primary issues in this litigation: the insurance policies and Shaw's use and discharge of PFAS from its plant in Georgia. While the witnesses referenced by Plaintiffs may be able to testify to the *effects* of the PFAS discharges on their county, Plaintiffs do not point to any

individuals with relevant knowledge about Shaw's insurance policies, its discharge of PFAS, or its practices for removing PFAS that reside in the state of Alabama. Yet, these are the key issues in this controversy.

Therefore, the court finds that the vast majority of witnesses with material knowledge regarding the insurance policies and/or Shaw's purported dumping of contaminated water are actually (or at least likely) located in the Northern District of Georgia. As a result, "the convenience of the majority of witnesses favors transfer of this action." *See Insuracorp, Inc. v. Am. Fid. Assurance Co.*, 914 F. Supp. 504, 506 (M.D. Ala. 1996).

### 3.     The Location of the Relevant Documents

The location of relevant documents and property in this suit is a factor that also weighs in favor of transferring venue to the Northern District of Georgia. Plaintiffs have failed to identify, with any specificity, any documents or evidence that are located in the Northern District of Alabama and that are relevant to the controversy at issue in <u>this</u> case.

Shaw, on the other hand, has pointed out that all documents in its control -- including all insurance policies -- are located at its facilities in Georgia. Plaintiffs counter that this factor carries less weight in our modern era of technology where any documents may be scanned, stored, and transported electronically. (Doc. # 72 at 14-15). To be fair, the court has recognized that this factor may not be as significant as it once was given the advent of litigants' ability to manage discovery electronically. Nevertheless, recent technological developments do not render this factor superfluous. *U.S. ex rel. Elder v. DRS Techs., Inc.*, 2013 WL 3151171, at *4 (N.D. Ala. 2013) (quoting *Watson v. Earthbound Holding, LLC*, 2012 WL 3775760, at *3 (N.D. Ala. 2012)). But, properly analyzed, these recent technology breakthroughs do not mitigate this factor as strongly here as they might in other cases. Some of the relevant insurance policies were issued

11

in the 1980s, and thus were drafted before the current wave of technology. These documents reportedly are not in the digital format. Therefore, the court finds that this weighs in favor of transfer. *See Harper*, 2009 WL 1605800, at *4 ("[T]he fact that documents and records related to [the plaintiff's claims] are retained primarily at defendant's headquarters in [the transferee district] favors transfer"); *see also Dye v. Mag Instrument, Inc.*, 2010 WL 11615034, at *4 (N.D. Ala. 2010) (where "relevant documents" are not already "available in easily transferrable digital format," "the location of relevant documents and the relative ease of access to sources of proof is an appropriate factor for the court to consider and … weighs in favor of transferring").

As already noted, both Shaw's manufacturing facility and the LAS waste disposal facility are located in the Northern District of Georgia. As the 1980-1985 Federal insurance policies contain coverage for sudden or accidental discharge of pollutants (Doc. # 65 at ¶ 75), it is more than conceivable that on-site inspections of those facilities may be an important part of discovery related to the process of disposing of wastewater. The ease of an on-site inspection also weighs in favor of transfer to the Northern District of Georgia. *See Yes Lighting, LLC v. PSG Energy Grp., LLC*, 2019 WL 13225114, at *3 (S.D. Fla. 2019) (citing *Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963)).[2]

### 4. The Convenience of the Parties

Next, the court considers the convenience of the parties. Obviously, the Northern District of Georgia is the more convenient forum for Shaw, as the company is incorporated and located there. *See Dye*, 2010 WL 11615034, at *4 (finding that a defendant's corporate officer being located in the transferee forum weighs in favor of transfer). Plaintiffs and the Defendant Insurers, on the other hand, are not from Alabama or Georgia. Although Plaintiffs have chosen the

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Northern District of Alabama as the place to bring this suit, the court has already found that their choice of forum is entitled to less deference in this action.

Case law is clear: transfer should not merely shift inconvenience from one party to another. *Robinson*, 74 F.3d at 260. Here, transfer would make litigation more convenient for Shaw and seemingly would not shift any inconvenience to Plaintiffs, who will be forced to travel to either Alabama or Georgia, in any event. Accordingly, the court finds that this factor, at best, favors transfer and, at worst, is neutral.

### 5. The Locus of Operative Facts

"In determining the locus of operative facts, the court must look at 'the site of [the] events from which the claim arises.'" *Nat'l Tr. Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016) (quoting *Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*, 294 F. Supp. 2d 218, 220 (D. Conn. 2003)). Here, as previously discussed, the claims arise from insurance policies that were issued in Georgia and are central to coverage related to suits over Shaw's use and disposal of harmful pollutants at its factory in Georgia. Therefore, this factor weighs in favor of transfer.

### 6. The Availability of Process to Compel Unwilling Witnesses

Rule 45(c)(1) of the Federal Rules of Civil Procedure states in relevant part that:

> A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1). The majority of the anticipated witnesses in this litigation are likely located in Dalton, Georgia. Based on the parties' briefings, Dalton is 90 miles from Anniston, Alabama, which is the place where trial would be held in a case filed where this one was -- the

13

Eastern Division of the Northern District of Alabama. (*See* Docs. # 72 at 14; 78 at 4). Comparatively, Dalton is less than 40 miles from Rome, Georgia, the place where the court understands trial would be held in the district where Shaw seeks transfer -- in the Rome Division of the Northern District of Georgia. (*Id.*). Therefore, either forum could compel unwilling witnesses under Rule 45. As a result, the court finds this factor to be neutral. *See Jones v. Mar-Mal, Inc.*, 2021 WL 1535881, at *2 (M.D. Ala. 2021) (finding the availability of process to compel unwilling witnesses as neutral when either forum could do so).

### 7. The Relative Means of the Parties

As Plaintiffs point out, "this case involves large national and international companies." (Doc. # 72 at 16). As a result, neither party has introduced any evidence showing that one company has more means than another. In light of these considerations, the court concludes that this factor is neutral and does not sway its analysis either way. *See Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D. N.Y 1998) (noting that "where proof of … disparity is not adequately provided, or does not exist, this is not a significant factor to be considered"); *see also In re Lehman Brothers Holdings Inc.*, 594 B.R. 33, 78 (S.D. N.Y. 2018) ("[W]hen plaintiff and defendant are both corporations, the relative resources of the parties are given little weight in the transfer analysis").

### 8. Forum's Familiarity with the Governing Law

In a case such as this one, where jurisdiction is based on diversity,[3] the court must apply the choice of law rules of Alabama. *See e.g., Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,

---

[3] The court notes that the First Amended Complaint states that "[t]his Court also has jurisdiction over this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action." (Doc. # 65 at ¶ 22). However, "[t]he Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction." *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). It follows that a "federal court … 'must have jurisdiction already under some other federal statute' before a plaintiff can 'invok[e]

496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Alabama follows the *lex loci contractus* rule to determine which state's law applies to contract interpretation. *James River Ins. Co. v. Ultratec Special Effects, Inc.*, 449 F. Supp. 3d 1157, 1165 (N.D. Ala. 2020) (citing *Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007)). "Thus, absent a choice-of-law provision in a contract, Alabama courts apply the substantive law of the state where the contract was formed, 'unless it is contrary to this State's fundamental public policy.'" *James River Ins. Co.*, 449 F. Supp. 3d at 1165 (quoting *Blalock v. Sutphin*, 275 So. 3d 519, 523 (Ala. 2018)). A contract for an insurance policy is formed in the state where the policy was issued or delivered. *Cherokee Ins. Co., Inc.*, 975 So. 2d at 293 (citing *Cincinnati Ins. Co. v. Girod*, 570 So. 2d 595, 597 (Ala. 1990)).

The insurance policy in this case was issued and delivered in Georgia; therefore, the laws of Georgia govern this controversy. Although this court is certainly capable of interpreting and applying Georgia's law, the Northern District of Georgia is undoubtedly better suited for the task. *See Chambers*, 2010 WL 11565361, at *6 (finding that a New York court would be more familiar with New York laws than an Alabama court); *Conseal Int'l Inc. v. Econalytic Sys., Inc.*, 2009 WL 1285865, at *4 (S.D. Fla. 2009) ("Colorado district courts are surely more familiar with Colorado contract law than are Florida district courts"); *Harris v. Lawson*, 2008 WL 4003999, at *4 (M.D. Ga. 2008) (finding a Georgia federal court would be better suited for a case applying Georgia law than a Florida federal court).

Plaintiffs argue that, because there is no major conflict between Georgia law and Alabama law, transfer is unnecessary. But, at this point in the litigation, it is impossible for the court to predict every legal issue that may arise in order to assess whether there may be a conflict

---

the Act.'" *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (quoting *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007)). To be clear, the court's exercise of jurisdiction in this case is based on diversity jurisdiction under 28 U.S.C. § 1332.

between Georgia and Alabama law. Instead, "there is an appropriateness … in having the trial of a diversity case in a forum that is home with the state law that must govern the case rather than having a court in some other forum untangle problems in conflicts of laws and in law foreign to itself." *Hutchens*, 928 F. Supp. at 1091 (quoting *Gulf Oil Corp.*, 330 U.S. at 509). Therefore, this factor weighs in favor of transfer.

### 9. Trial Efficiency and the Interest of Justice

Finally, the court must examine trial efficiency and the interest of justice, based on the totality of the circumstances, in determining whether transfer is appropriate. *See Manuel*, 430 F.3d at 1135 n.1. In making this evaluation, the court considers a variety of factors, including the importance of "having localized controversies decided at home, the desire to avoid imposing jury duty upon the people of a community which has no relation to the litigation, and the administrative convenience of having the trial of a diversity case in a forum that is at home with the state law that must govern." *Harper*, 2009 WL 1605800, at *5 (citing *Gulf Oil*, 330 U.S. at 509; *Roofing & Sheet Metal Serv., Inc. v. La Quinta Motor Inns*, 690 F.2d 982, 991 (11th Cir 1982)).

Plaintiffs contend that litigating this case in the Northern District of Alabama will be more efficient because the dockets are less congested than those in the Northern District of Georgia. (Doc. # 72 at 18). Even assuming this is true, it is not dispositive in evaluating this factor. "[T]he mere possibility that trial will be held sooner in the original court does not justify a denial of transfer when it is otherwise supported by the convenience of the parties and the witnesses." *Delorenzo v. HP Enterprises Servs., LLC*, 79 F. Supp. 3d 1277, 1284 (M.D. Fla. 2015) (quoting Moore's Federal Practice, Vol. 17, § 111.13[1][k] (3d ed. 2014)); *see also* Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) ("Although docket

16

conditions may be considered on the transfer motion, this factor always must be weighed against the other arguments for and against transfer of the case. In other words, it is not decisive.").

As already discussed, the convenience of having the trial of a diversity case in a forum that is at home with the state law governing a case is a factor that weighs in favor of transferring venue to the Northern District of Georgia. Because almost all of the events forming the basis of this lawsuit (*i.e.*, the formation of the insurance agreements and the discharges that are at the heart of the underlying cases) all occurred at Shaw's manufacturing plant in Dalton, Georgia, the court readily concludes that the importance of having localized controversies at home and the desire to avoid imposing jury duty upon the people of a community with little relation to the litigation favors transfer of this action to the Northern District of Georgia. *See* Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris. § 3854 (3d ed.) ("[T]he administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts and consequently may have a particular interest in the proper resolution of the dispute. …"). Therefore, based on the totality of the circumstances, trial efficiency and the interests of justice factor weigh in favor of transferring to the Northern District of Georgia.

## IV. Conclusion

For the reasons stated above, an analysis of the relevant factors weighs in favor of transfer to the Northern District of Georgia. Therefore, Shaw has carried its burden and its Motion to Transfer (Doc. # 63) is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this June 7, 2024.

R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE