# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

|  |  |
|---|---|
| **FEDERAL INSURANCE COMPANY,**<br><br>**Plaintiff,**<br><br><br>**v.**<br><br><br>**SHAW INDUSTRIES, INC., and SHAW INDUSTRIES GROUP, INC.,**<br><br>**Defendants,**<br><br>**v.**<br><br>**COMMERCE & INDUSTRY INSURANCE COMPANY; EMPLOYERS INSURANCE COMPANY OF WAUSAU; GREAT AMERICAN INSURANCE COMPANY; U.S. FIRE INSURANCE COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY,**<br><br>**Nominal Defendants.** | **CIVIL ACTION NO.: 4:24-cv-00147-WMR** |

## SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Federal Insurance Company ("Federal"), state as follows by and through its undersigned counsel, brings this action for declaratory relief pursuant to 28 U.S.C. § 2201 (the "Declaratory Judgment Act").[1]

### I.    INTRODUCTION

1.    This is a civil action for declaratory judgment.  Federal seeks a declaration that it has no duty to provide insurance coverage to Shaw Industries, Inc. and Shaw Industries Group, Inc., (collectively, "Shaw"), under the excess liability insurance policies identified herein, in connection with underlying claims and litigation involving alleged environmental contamination arising out of Shaw's carpet manufacturing and waste discharge.

2.    The underlying suits and claims giving rise to this declaratory judgment action involve claims brought on behalf of towns, municipalities, and/or utility authorities in Alabama and Georgia seeking damages for environmental contamination allegedly caused by Shaw and others. The underlying suits are referred to collectively herein as the "Underlying Actions." Included amongst the Underlying Actions is a pending claim in *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 61-cv-2023-900112.00 (Cir. Ct. Talladega Cty.).

3.    More specifically, the underlying claimants allege damages due to the release of toxic chemicals including perfluorinated compounds ("PFCs"), including, but not limited to

---

[1] Out of an abundance of caution, Federal wishes to make clear that the Second Amended Complaint is a pleading only signed by Federal Insurance Company. Commerce & Industry Insurance Company, Employers Insurance Company of Wausau, Great American Insurance Company, Travelers Casualty and Surety Company and U.S. Fire Insurance Company have filed their own individual crossclaims against Shaw.

perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), precursors to PFOA and PFOS, and related chemicals into local waterways.[2]

## II.   **THE PARTIES**

4.     [Intentionally left blank due to the dismissal without prejudice of ACE American Insurance Company as a party]

5.     [Intentionally left blank due to the dismissal without prejudice of ACE Property and Casualty Insurance Company as a party]

6.     Federal is an insurance company incorporated in Indiana, with its principal place of business in New Jersey.

7.     [Intentionally left blank due to the dismissal without prejudice of Indemnity Insurance Company of North America as a party]

8.     [Intentionally left blank due to the dismissal without prejudice of Westchester Fire Insurance Company as a party]

9.     Upon information and belief, Shaw Industries, Group Inc. is a corporation incorporated under the laws of the State of Georgia with its principal place of business in Dalton, Georgia.  It is authorized to do business and does business in the State of Alabama.

10.    Upon information and belief, Shaw Industries, Inc. is a corporation incorporated under the laws of the State of Georgia with its principal place of business in Dalton, Georgia.  It is authorized to do business and does business in the State of Alabama.

11.    Commerce and Industry Insurance Company ("Commerce and Industry") is an insurance company incorporated in New York, with its principal place of business in New York.

---

[2] For ease of reading, the foregoing chemicals will be referred to collectively herein as "PFAS."

Commerce and Industry issued liability insurance policies to Shaw at times relevant to the Complaint.

12.    [Intentionally left blank due to the dismissal without prejudice of Fireman's Fund Insurance Company as a party]

13.    [Intentionally left blank due to the dismissal without prejudice of First State Insurance Company as a party].

14.    Employers Insurance Company of Wausau ("Wausau") is an insurance company incorporated in Wisconsin, with its principal place of business in Massachusetts. Wausau issued liability insurance policies to Shaw at times relevant to the Complaint.

15.    Great American Insurance Company ("Great American") is an insurance company incorporated in Ohio, with its principal place of business in Ohio. Great American issued liability insurance policies to Shaw at times relevant to the Complaint.

16.    [Intentionally left blank due to the dismissal without prejudice of Westport Insurance Corporation as a party]

17.    Travelers Casualty and Surety Company ("Travelers") is an insurance company incorporated in Connecticut, with its principal place of business in Connecticut. Travelers issued liability insurance policies to Shaw at times relevant to the Complaint.

18.    U.S. Fire Insurance Company ("U.S. Fire") is an insurance company incorporated in Delaware, with its principal place of business in New Jersey. U.S. Fire issued liability insurance policies to Shaw at times relevant to the Complaint.

19.    [Intentionally left blank due to the dismissal without prejudice of John Doe Insurers as parties]

-4-

19A.   Commerce & Industry Insurance Company, First State Insurance Company, Employers Insurance Company of Wausau, Great American Insurance Company, U.S. Fire Insurance Company and Travelers Casualty & Surety Company will be collectively referred to as the "Nominal Defendant Insurers".

## III.   JURISDICTION & VENUE

20.   This Court has original jurisdiction over this declaratory judgment action based on 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201, et seq. This action involves a controversy between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

21.   There is complete diversity of citizenship between the Plaintiff and the Defendants as required under 28 U.S.C. § 1332(a).

22.   This Court also has jurisdiction over this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action.

23.   This Court has personal jurisdiction over Shaw as Shaw conducts business and maintains operations within the State of Georgia. Certain of the Underlying Actions also include allegations that Shaw knowingly directed its contaminated wastewater to Georgia waterways.

24.   A case of actual controversy is presented here because Shaw seeks insurance coverage from Federal for indemnity costs it has or will incur in connection with the Underlying Actions and Federal disputes its obligations to Shaw with respect to insurance coverage for the Underlying Actions.

25.     Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated within this District.

## IV.    FACTS AND BACKGROUND[3]

### A.    SHAW CARPETING

26.     Shaw is a producer of carpet, resilient flooring, hardwood, tile and stone, synthetic turf and other specialty flooring products.

27.     Shaw is the world's largest carpet manufacturer with approximately $5 billion in annual revenue.

28.     Shaw operates facilities in Georgia.

### B.    SHAW'S PFAS USE

29.     In the 1950s or 1960s, 3M Company ("3M") introduced a Scotchgard stain blocker and soil-resistant product that could be used to treat carpets.

30.     Shaw may have used these Scotchgard products in the 1950s or 1960s in its carpet manufacturing operations.

31.     Starting in or around 1972, 3M began marketing a stain blocker and soil-resistant product called Scotchgard to carpet companies, including Shaw.

32.     In the 1970s, E.I. DuPont de Nemours ("DuPont") also introduced a stain blocker and soil-resistant product called Teflon to carpet companies.

33.     In the early to mid-1970s, Shaw purchased Scotchgard products from 3M for use in Shaw's carpet manufacturing operations.

---

[3] The allegations of fact are stated upon information and belief.

34.    In the early to mid-1970s, Shaw may have purchased stain resistant products from other companies.

35.    In or around October 1986, DuPont introduced a stain blocker and soil-resistant product called Stainmaster and began marketing Stainmaster to carpeting companies such as Shaw.

36.    In or around October 1986, Shaw began purchasing Stainmaster products from DuPont for use in Shaw's carpet manufacturing operations.

37.    The stain-resistant products marketed and sold by 3M, DuPont, and/or others contained perfluoroalkyl and polyfluoroalkyl substances commonly referred to by the acronym "PFAS."

38.    The PFAS contained in the stain-resistant products utilized by Shaw were, at all relevant times, present in the wastewater produced as a waste by-product of Shaw's manufacturing process.

### C.    THE LAND APPLICATION SYSTEM AND SHAW'S WASTE DISPOSAL PRACTICES

39.    Shaw utilized Dalton Utilities ("Dalton") to dispose of its wastewater created by Shaw's manufacturing process.

40.    On July 17, 1984, Dalton applied for a permit to operate a Land Application System ("LAS") for its wastewater disposal needs.

41.    On August 20, 1986, Dalton received a permit to operate the LAS.

42.    The LAS is an approximately 9,600-acre system, operated by Dalton, in which wastewater is processed and dispersed onto the land surface.

43.    Beginning in or around August 20, 1986, Dalton began disposing of Shaw's wastewater at the LAS.

44.    Underlying Plaintiffs allege that PFAS from the LAS has contaminated local waterways.

45.    Shaw's wastewater and other waste may have been disposed in other ways during the relevant time periods.

**D.    THE UNDERLYING ACTIONS**

**i.  Facts Relevant to All Underlying Actions**

46.    Municipal entities in Alabama have asserted the following actions against Shaw alleging environmental contamination caused by Shaw's operations:

- *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.,* 61-cv-2023-900112.00 in the Circuit Court of Talladega County, Alabama;

- *The Water Works and Sewer Board of the City of Gadsden v. 3M Company, Inc., et al.,* 31-cv-2016-900676.00 in the Circuit Court of Etowah County, Alabama;

- *The Water Works and Sewer Board of the Town of Centre v. 3M Company, Inc., et al.,* 31-cv-2017-900049.00 in the Circuit Court of Cherokee County, Alabama.

47.    Municipal entities and/or individuals in Georgia have asserted the following actions against Shaw alleging environmental contamination caused by Shaw's operations:

- *The City of Rome, Georgia v. 3M Company, Inc., et al.,* 19-cv-02405-JFL-003, in the Superior Court of Floyd County, Georgia; and

- *Jarrod Johnson, individually and on behalf of a class of persons similarly situated v. 3M Company, et al.,* 4:20-cv-0008-AT, in the United States District Court for the Northern District of Georgia – Rome Division.

-8-

48.    All of the foregoing actions involve allegations that Shaw used and continues to use PFAS in the carpet and flooring manufacturing process and that the underlying plaintiff(s) suffered damages due to the negligent, willful, and wanton conduct of Shaw, as well as the nuisance and trespass caused by Shaw's past and present release of PFAS and related chemicals in and around its facilities in Dalton, Georgia.

49.    The plaintiffs in the Underlying Actions allege that Shaw had knowledge for decades that PFAS cannot be removed from the wastewater it sends to Dalton Utilities.

50.    The underlying plaintiffs allege to have suffered substantial economic and consequential damages, including, but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing PFAS from the water; expenses associated with the removal or remediation of contaminated property; expenses incurred to monitor PFAS contamination levels; and lost profits and sales.

### ii.  The Settled Underlying Actions

51.    Without the prior consent of Federal, Shaw settled the following underlying actions:

- *The Water Works and Sewer Bd. Of City of Gadsden v. 3M, et al.* (action filed in Alabama) ("*The City of Gadsden*");

- *The Water Works and Sewer Bd. Of Town of Centre v. 3M, et al.* (action filed in Alabama) ("*The Town of Centre*"); and

- *The City of Rome v. 3M, et al.* (action filed in Georgia) ("*The City of Rome*").

52.    All of the settled Underlying Actions contain generally the same allegations relating to Shaw's improper disposal of PFAS-contaminated waste and the contamination of local water supplies.

53.    In *The City of Gadsden* Complaint, the City of Gadsden alleged that PFAS released by Shaw contaminated the water in the Coosa River at the City of Gadsden Water Works intake site and that the chemicals cannot be removed by the current water treatment processes utilized by the City of Gadsden's water utility providers.

54.    The City of Gadsden sought economic and consequential damages, including but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing the chemicals at issue, as well as monitoring expenses, and lost profits and sales.

55.    On or about December 21, 2016, Shaw placed Federal on notice of the allegations at issue in *The City of Gadsden.*

56.    Via correspondence, Federal reserved its rights with respect to coverage for *The City of Gadsden.* Federal did not waive any applicable consent to settlement provisions contained within each insurer's respective policies.

57.    On or about September 9, 2022, Shaw agreed to settle the claims asserted against it in *The City of Gadsden* action without first obtaining Federal's consent.

58.    On or about June 6, 2017, Shaw placed Federal on notice of the allegations at issue in *The Town of Centre.*

59.    Via coverage correspondence, Federal reserved its rights with respect to coverage for *The Town of Centre.*

60.    Federal did not waive any applicable consent to settlement provisions contained within each insurer's respective policies.

61.    On or about March 28, 2023, Shaw agreed to settle the claims asserted against it in *The Town of Centre* action without first obtaining Federal's consent.

-10-

62.     On or about April 5, 2023, Shaw settled the claims against it by *The City of Rome* without first obtaining the Federal's consent.

63.     Via coverage correspondence, Federal reserved its rights with respect to coverage for *The City of Rome.*

64.     Federal did not waive any applicable consent to settlement provisions contained within the Federal policies.

65.     On or about April 5, 2023, Shaw settled the claims against it in *The City of Rome* without Federal's consent.

### iii.  Currently Pending Underlying Actions

66.     In addition to the settled Underlying Actions, Federal has received notice of two currently pending Underlying Actions asserted against Shaw.

67.     The matter of *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, Inc., et al.*, is currently pending in the United States District Court for the Northern District of Alabama and involves allegations that Shaw "expressly and directly aimed polluted wastewater from their plants not only at Dalton Utilities and the LAS in Georgia but also at Alabama through the continuing flow of the polluted wastewater from [Shaw's] plants, into the Coosa River and its tributaries, and ultimately to Shelby and Talladega Counties."

68.     Shelby and Talladega Counties allege that they have suffered economic and consequential damages, including, but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing PFAS from the Counties' water; expenses associated with the removal and/or remediation of contaminated property; expenses incurred to monitor contamination levels; and lost profits and sales.

69.    The matter of *Jarrod Johnson, et al. v. 3M, et al.* is pending in the United States District Court for the Northern District of Georgia and involves water contamination claims asserted by a class of claimants consisting of owners and occupants of property served by Rome Water and Sewer Division and the Floyd County Water Department who have allegedly been and continue to be provided with water contaminated by the release of chemicals by Shaw and others. *Johnson* Complaint at 3.

## V.    THE POLICIES ISSUED BY FEDERAL

70.    As discussed above, Shaw has focused its demand for insurance coverage from the Plaintiff on the following excess liability insurance policies issued by Federal (referred to hereafter as the "1980-1985 Federal Policies"):

| Policy No. | Policy Inception | Policy End |
|---|---|---|
| 79221063 | 07/01/1980 | 07/01/1981 |
| 79221063 | 07/01/1981 | 07/01/1982 |
| 79221063 | 07/01/1982 | 07/01/1983 |
| 79221063 | 07/01/1983 | 07/01/1984 |
| 79221063 | 07/01/1984 | 07/01/1985 |

Shaw Industries, Inc. is the named insured, but Shaw Industries Group, Inc. also asserts coverage rights.

71.    The insuring agreement of the 1980-1985 Federal Policies provides in part that coverage under the policies is limited to the payment of "Loss" resulting from an occurrence insured by the terms of the underlying policies:

> In consideration of the payment of the required premium and subject to all the terms of this policy, the Company agrees to pay on behalf of the insured LOSS resulting from any occurrence Insured by the terms and provisions of the First UNDERLYING INSURANCE

policy scheduled in item 6 of the Declarations (except for the Limits of Liability and defense provisions, if any). The insurance afforded by this policy shall apply only in excess of and after all UNDERLYING INSURANCE (as scheduled in item 6 of the Declarations) has been exhausted.

72. The term "Loss" is defined in the policies as:

The amount of the principal sum, award or verdict, actually paid or payable in cash in the settlement or satisfaction of claim for which the insured is liable, either by adjudication or compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages.

73. The underlying policies to which the 1980-1985 Federal Policies follow form in part provide, subject to all other applicable terms, that coverage is provided only for liability arising from an "occurrence" which is defined in the following or substantially similar terms as:

an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in injury, property damage pr advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

74. The 1980-1985 Federal Policies also provide that Federal has no obligation to assume charge of the investigation, settlement or defense of any claim or suit, such as the Underlying Actions, but Federal has the right to associate in the defense of any claim or suit:

The Company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suits brought, or proceedings instituted against the Insured, but shall have the right to be given the opportunity to be associated in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy. If the Company avails itself of such right and opportunity the Company shall do so at its own expense. Court costs and interest, if incurred with the consent of the Company, shall be borne by the Company and other interested parties in the proportion that each party's share of LOSS bears to the total amount of Loss sustained by all interested parties.

-13-

75.     The 1980-1985 Federal Policies contain the following Pollution Exclusion:

> This policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

76.     The 1980-1985 Federal Policies provide that,

> The Insured agrees that the First UNDERLYING INSURANCE policy, and other UNDERLYING INSURANCE following the terms and provisions of the First UNDERLYING INSURANCE policy (except for limit of liability and defense provisions, if any), shall be maintained in full effect during the currency of this policy except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. The failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure the Company shall only be liable to the same extent as if the Insured had complied with this condition.

77.     The 1980-1985 Federal Policies include other terms, conditions, and exclusions that may limit or bar coverage for the Underlying Actions.

### i. Other Federal Policies

78.     In addition to the 1980-1985 Federal Policies, Federal issued excess liability policies to Shaw Industries Inc. for annual policy periods from July 1, 1985 to July 1, 2016.[4] The July 1, 1985 to July 1, 2016 Federal policies are referred to herein as the "Post-1985 Federal Policies."

79.     The Post-1985 Federal Policies contain absolute pollution exclusions.

80.     Upon information and belief, Shaw is not presently seeking coverage for the Underlying Actions under any of the Post-1985 Federal Policies.

---

[4] These policies are listed in the Plaintiffs' Policy Schedule attached hereto as Exhibit A.

81.     However, Shaw notified Federal of the actions under those policies and has not formally withdrawn its notice.

82.     [Intentionally left blank due to the dismissal without prejudice of Pacific Employers Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company Indemnity Insurance Company of North America, and Westchester Fire Insurance Company with respect to the policies novated from International Insurance Company]

83.     [Intentionally left blank due to the dismissal without prejudice of Pacific Employers Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company Indemnity Insurance Company of North America, and Westchester Fire Insurance Company with respect to the policies novated from International Insurance Company]

84.     [Intentionally left blank due to the dismissal without prejudice of Pacific Employers Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company Indemnity Insurance Company of North America, and Westchester Fire Insurance Company with respect to the policies novated from International Insurance Company]

85.     [Intentionally left blank due to the dismissal without prejudice of Pacific Employers Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company Indemnity Insurance Company of North America, and Westchester Fire Insurance Company with respect to the policies novated from International Insurance Company]

## VI.     POLICIES ISSUED BY NOMINAL DEFENDANT INSURERS

86.    Nominal Defendant Insurers issued one or more liability insurance policies to Shaw Industries, Inc. at various times. A non-exhaustive list of currently known policies issued by the Nominal Defendant Insurers is attached hereto as Exhibit B.

87.    Shaw has notified the Nominal Defendant Insurers of the Underlying Actions and has sought coverage from them for the Underlying Actions.

88.    Upon information and belief, Shaw Industries, Inc. is also the insured on liability policies not listed on Exhibit B ("Non-Exhibit B Policies").

89.    Upon information and belief, Shaw has not given notice to insurers under Non-Exhibit B Policies for the Underlying Actions.

90.    Upon information and belief, Shaw does not seek coverage under Non-Exhibit B Policies for the Underlying Actions.

## COUNT I

### (Declaratory Judgment as to Shaw)

91.    Federal incorporates each and every allegation of the preceding paragraphs as if fully set forth at length herein.

92.    Shaw has made a demand for coverage under policies issued to Shaw by Federal for indemnity in connection with the Underlying Actions.

93.    There is an actual and justiciable controversy between Shaw and Federal with respect to potential insurance coverage for the Underlying Actions.

94.    [Intentionally deleted due to dismissal without prejudice of parties]

95.    [Intentionally deleted due to dismissal without prejudice of parties]

-16-

96.    Federal has no adequate remedy at law, and this is a proper case for the Court to exercise its jurisdiction and declare the rights and liabilities of Federal and Shaw with respect to the Underlying Actions.

97.    Insurance coverage for the Underlying Actions under any actual or alleged insurance policies issued by Federal to Shaw is barred in whole or in part, or potential coverage is otherwise limited because:

a.   the pollution exclusions in the 1980-1985 Federal Policies exclude coverage;

b.   the 1980-1985 Federal Policies only provide coverage for an occurrence and the Underlying Actions do not involve an occurrence;

c.   the 1980-1985 Federal Policies only provide coverage for third party property damage during the policy period and Shaw has not established the existence of third party property damage  during the policy periods of the 1980-85 Federal Policies;

d.   the 1980-1985 Federal Policies do not provide coverage for prophylactic expenses to prevent future injury or damage rather than to remediate past property damage;

e.   the attachment point of the 1980-1985 Federal Policies has not been reached;

f.   there is no duty under the 1980-1985 Federal Policies to drop down for insolvent underlying coverage;

g.   the Underlying Actions were settled without Federal's consent and consent is required under the 1980-1985 Federal Policies;

h.   to the extent the Federal is found to owe defense costs and/or indemnity costs in connection with the Underlying Actions, Federal's obligation will be limited to a pro rata allocated share determined on a "time on the risk" basis and Shaw will be

-17-

responsible for all uninsured, underinsured, and self-insured periods, regardless of whether insurance coverage was available during such periods.

i.   Coverage for the Underlying Actions may be barred in whole or in part under other terms of the 1980-1985 Federal Policies and under the applicable law, including but not limited to Shaw Industries Group, Inc. not qualifying as an insured under the 1980-1985 Federal Policies.

98.   Therefore, Federal requests that the Court enter a declaratory judgment declaring that there is no coverage for the Underlying Actions under the policies issued by Federal or that any coverage is limited in accordance with the terms of the policies and the applicable law.

## COUNT II

### (In the Alternative, Declaratory Judgment as to the Nominal Defendant Insurers)

99.   Federal incorporates each and every allegation of the preceding paragraphs as if fully set forth at length herein.

100.   Nominal Defendant Insurers issued policies to Shaw that potentially provide insurance coverage for the claims against Shaw in the Underlying Actions.

101.   Shaw has tendered to or otherwise notified the Nominal Defendant Insurers of the Underlying Actions and has sought coverage for those actions from the Nominal Defendant Insurers of the Underlying Actions.

102.   If the Court determines that Federal has an obligation in whole or in part to provide coverage to Shaw for one or more of the Underlying Actions, then Federal requests that the Court declare the rights and obligations of all parties, including the Nominal Defendant Insurers with respect to insurance coverage for the Underlying Actions.

**WHEREFORE**, Federal respectfully demand that judgment be entered as follows:

(1)     Entering judgment against Shaw that there is no coverage for the Underlying Actions under the policies issued by Federal or that any coverage is limited in accordance with the terms of the policies and the applicable law.

(2)     Awarding Federal its attorneys' fees and costs against Shaw;

(3)     Or in the alternative, the Court declare the rights and obligations of all parties, including the Nominal Defendant Insurers with respect to insurance coverage for the Underlying Actions; and

(4)     Awarding Federal all other relief to which it may be entitled.


Respectfully submitted this 16th day of October, 2024.

/s/ *Lee M. Gillis, Jr.*
Lee M. Gillis, Jr.
**Hall Bloch Garland & Meyer, LLP**
577 Mulberry Street, Suite 1500
Macon, GA 31201-5088
Telephone: (478) 745-1625
Direct: (478) 803-8025
leegillis@hbgm.com


Christopher Hemphill
*(Adm. PHV)*
Michael Baughman
*(Adm. PHV)*
**COHN BAUGHMAN**
525 W. Monroe St.
Suite 1500
Chicago, IL 60661
Mobile: 708.602.5118 (preferred)
Office: 312.753.6616
christopher.hemphill@mclolaw.com
michael.baughman@mclolaw.com

*Attorneys for Plaintiffs*

## EXHIBIT A: PLAINTIFF'S POLICY SCHEDULE

| Policy Number | Policy Inception | Policy Expiration | Issuing Company |
|---|---|---|---|
| 79221063 | 07/01/1980 | 07/01/1981 | Federal Insurance Company |
| 79221063 | 07/01/1981 | 07/01/1982 | Federal Insurance Company |
| 79221063 | 07/01/1982 | 07/01/1983 | Federal Insurance Company |
| 79221063 | 07/01/1983 | 07/01/1984 | Federal Insurance Company |
| 79221063 | 07/01/1984 | 07/01/1985 | Federal Insurance Company |

## EXHIBIT B: NOMINAL DEFENDANTS' POLICY SCHEDULE

| Issuing Company | Policy Number | Policy Inception | Policy Expiration |
|---|---|---|---|
| Wausau | 142000043765 | 01/01/1969 | 01/01/1970 |
| Wausau | 142100043765 | 01/01/1970 | 01/01/1971 |
| Wausau | 142403043765 | 07/01/1973 | 07/01/1974 |
| Wausau | 142503043764 | 07/01/1974 | 07/01/1975 |
| Wausau | 142603043765 | 07/01/1975 | 07/01/1976 |
| Wausau | 142805043765 | 07/12/1975 | 07/01/1978 |
| Wausau | 142703043765 | 07/01/1976 | 07/01/1977 |
| Travelers | 11AL216136SCA | 07/01/1977 | 07/01/1978 |
| Travelers | 11AL216161SCA | 07/01/1978 | 07/01/1979 |
| Travelers | 11GL12264SCA | 07/01/1979 | 07/01/1980 |
| Great American | XO214843700 | 07/01/1980 | 07/01/1981 |
| Great American | XO259844500 | 07/01/1981 | 07/01/1982 |
| Commerce and Industry | GLA6503363 | 07/01/1982 | 07/01/1983 |
| U.S. Fire | 5220193104 | 04/01/1983 | 07/01/1984 |
| Commerce and Industry | GL9890147 | 07/01/1983 | 07/01/1984 |
| Commerce and Industry | GL9712990RA | 07/01/1984 | 07/01/1985 |
| U.S. Fire | 5220262728 | 07/01/1984 | 07/01/1985 |
| Commerce and Industry | GL9712066 | 07/01/1985 | 07/01/1986 |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this date served a copy of *Second Amended Complaint for Declaratory Judgement* upon counsel of record by e-filing the same us the CM/ECF File & Serve System which will automatically send email notification of said filing to all counsel of record.

This 16th day of October, 2024.

/s/ *Lee M. Gillis, Jr.*
LEE M. GILLIS, JR.